**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.   ) | No. 04 CR 464-1 |
| ) | |
| **MARVEL THOMPSON** ) | |

**MEMORANDUM OPINION AND ORDER**

Marvel Thompson, defendant in 4 Cr 464 and plaintiff in 8 C 1294[1], seeks an order requiring the government to turn over to him $320,055.25 in United States currency and various other items that were seized from him during the execution of search and arrest warrants in 2004. Thompson was indicted, along with 45 other defendants, on August 31, 2004. The 45 count indictment charged that Thompson and the other defendants from 1989 until their arrest in June, 2004 conspired with each other to knowingly and intentionally possess with intent to distribute cocaine, heroin, and other drugs. The offense involved a large-scale drug distribution conspiracy operated by the Black Disciples street gang. The organization was highly structured, at the top of which was a king, Thompson. (Thompson was the sole king from 1989 to 2003, when he split the organization into three territories, appointing two others as king of two of the territories. Thompson continued to be the king of the Englewood or Southside of Chicago

---

[1] The Clerk's office of the District Court assigns a new number to a petition for return of property.

territory.)  The organization controlled its drug trade and members through stringent rules and violence.  Thompson plead guilty to the conspiracy charge on March 29, 2005.  On April 26, 2007, after a lengthy sentencing hearing, Thompson was sentenced to 540 months in the Bureau of Prisons.  I also imposed a fine of $100,000, and a required special assessment of $100. Thompson's appeal of the sentence has been argued but remains pending.

In March, 2008, Thompson filed a petition under Fed. R. Crim P. 41(g), seeking the return of all property held by the government, including computer hardware, financial documentation, cameras, video equipment, specified small amounts of currency, real property, a vehicle and $318,955.25.  I directed the government to file a response by a certain date.  The government failed to do so but the government apparently advised this court's courtroom deputy that it would do so promptly, as indicated by a minute order dated July 18, 2008.  Thompson then filed a motion for a default judgment, which was heard in court on July 25, 2008 and continued on two status hearings.[2]  On September 18, 2008, I ordered the government to file its response by October 10, 2008 or be held in

---

[2] Thompson complains that status hearings on this matter were held without his presence but he is currently incarcerated in Louisiana.  As he notes, the present proceeding is part of his criminal case.  He continues to be represented by counsel of record, and notices of each status hearing were given.  I also gave Thompson the option of seeking the appointment of counsel for this matter. Thompson has received a transcript of each hearing as well.

default.  At a subsequent status, I gave the government one last extension, and a response was filed on October 17, 2008.

The government's response indicates that it seized funds in four separate cash seizures totaling $320,055.25 from Thompson. The government stated that it initiated administrative forfeiture proceedings soon after Thompson's arrest with respect to $8,775.25 of this amount.  No party made a claim to these funds and they were forfeited.  The government stated, however, that it would release seized funds in the amount of $310,180.00, plus accrued interest, and an additional amount of $1,100.  The government stated that the vehicle, in the name of some person other than Thompson, and without equity, was returned to the lien holder, Ford Motor Credit, in 2005.  The government provided copies of its release of *lis pendens* notices on the real property, as proof that it no longer held any interest in such property.  The government insisted that it needed to hold the remaining property (consisting of computers and financial information) until all appeals are exhausted.

I gave Thompson until November 11, 2008 to file his reply.  In his reply Thompson argued that the government should not be excused from turning over the $8,775.25 that the government claimed had been administratively forfeited, both because the government (through some agency) continued to hold the funds and because Thompson in fact filed a claim for the money in question.  Thompson also argued that the government figures were incorrect, and that

3

apart from the claim for $8,775.25, it actually owed him $314,955.25, a $3,675.25 discrepancy. Thompson also disagrees with various other positions taken by the government.

In reviewing the various memoranda filed with respect to this motion, I examined Thompson's presentence investigation report. That report stated that Thompson had a negative net worth of $415,000, that he had only $15,000 in cash, that he held certain real property with equity in the amount of $570,000 and that, according to Thompson's attorney, he had debts in the amount of $1,000,000. Since the information in the presentence report with respect to Thompson's assets failed to mention that the government held over $300,000 in cash that it apparently had no claim to, I issued an order to the government and Thompson's criminal attorney to explain why they had not informed the Probation Department and myself of the error in the presentence report before sentencing. At the sentencing hearing, I had decided, based on his ownership of the various real property and Thompson's position in the drug organization that he could pay a substantial fine. Nevertheless, it would have been relevant to the determination of how great the fine should be, and whether Thompson should pay for the cost of incarceration and supervised release, to know that a substantial amount of cash was available. (I might have decided that no greater fine should be imposed due to Thompson's parental responsibilities – he has eleven underage children from various relationships. I

also would have had concern, however, about the head of a drug organization retaining large amounts of money following conviction of a drug conspiracy if the money was a result of the conspiracy.[3]) Furthermore, I believed that both the government and defense counsel (who made certain representations about Thompson's finances to the Probation Department) had an obligation to honestly inform the court of whatever information they had.

In response to my request for an explanation, the government, having realized that Thompson had not paid the fine imposed by this court, filed a motion requesting that $99,555 of the money be turned over in payment of the fine. With respect to the cash in general, the government stated that it had simply "dropped the ball" or, apparently, neglected to seek forfeiture at the time of sentencing. It noted, as Thompson stated, that the existence of the cash at one time was mentioned during the two day sentencing hearing (in the context of the fact that $300,000 seized from Thompson's apartment were in "tens and twenties," consistent with drug transactions), but it did not claim that this mention was likely to have, or was intended to, correct the financial information in the presentence report. In fact, I had no reason to believe that the money had not been disposed of in some way, nor

---

[3] Thompson's reported earnings as set forth in the presentence report would not appear to substantiate a non-criminal basis for the large amount of cash seized by the government. If I had known about the money, however, that would also have been an issue that could have been addressed by the parties.

5

did I know that the government retained the money in its possession.

At the conclusion of the hearing on December 5, I decided that since the criminal appeal was still pending it made sense to wait until the appeal was decided. On the possibility that the court of appeals would decide that he needed to be resentenced, I would expect to consider further an appropriate fine. Since Thompson has not paid the fine imposed at the time of sentencing, and objects to even having money withheld from the funds that he wishes returned to pay that fine, my concern that any additional fine would not be paid appears valid. Thompson has objected to holding the motion in abeyance. Therefore, the motion for return of cash and various property, including computers and financial information is denied without prejudice, as premature. Upon completion of the appeal, if Thompson's sentence is affirmed, I will promptly decide a new motion, based on the information contained in the motion before me. I note that there are numerous areas in which the parties continue to disagree, however, (and there is at least one motion to intervene filed seeking to recover from these funds a claim of an unsatisfied judgment). If the parties cannot reach agreement on these issues, they may be referred to a magistrate judge for hearing.[4]

---

[4] In his most recent filing, Thompson implies that I should recuse myself because of bias. He apparently bases this on my statement that I have concern about the propriety of allowing a

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Court

**Dated:** January 30, 2009

---

drug leader to retain large sums of money obtained as a result of drug operations, and a comment about my belief that a lawyer has been writing Thompson's numerous briefs in this court, although they are filed *pro se*. It is doubtful that Thompson (or almost any other incarcerated defendant) would have the resources to file the detailed legal memoranda that he has been filing, and it is unlikely that any non-lawyer could write these memoranda. My statement was that the memoranda contain inaccurate factual statements, and are at times impolite in a way that would not be tolerated by a member of the bar. There is no basis for recusal and if the suggestion is intended as a motion, it is denied. With respect to a need for a hearing, since Thompson says that his criminal attorney of record is not representing him in this matter (and counsel at the hearing on December 5, 2008 agreed with his statement), I again remind Thompson that if he shows that he is without funds to hire an attorney, I will appoint an attorney to represent him. He may also have retained counsel file an appearance. If neither of these is satisfactory, I will attempt to have Thompson participate in future hearings by telephone.