UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 464 |
| | ) | Judge Elaine Bucklo |
| MARVEL THOMPSON | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its response to defendant Marvel Thompson's Motion to Reduce Sentence under Section 404 of the First Step Act.

## PROCEDURAL HISTORY

### *Background*

The Black Disciples was one of the largest street gangs in the city and financed most of its activities by means of selling enormous quantities of cocaine, heroin and marijuana in Englewood and in housing-projects on Chicago's South and West sides. *United States v. White et al.*, 582 F.3d 787, 793-94. (7th Cir. 2009). The gang collected street taxes, laundered drug money through real estate, jewelry, businesses, and vehicles obtained by members of the conspiracy. *Id.* at 794. The gang had a rigid hierarchical leadership structure, with a "king" as the leader who determined gang policy and ran gang operations. *Id.* Thompson served as king from the early 1990s until 2003, at which time the structure shifted to a three-king leadership with Thompson in charge of the gang's South Side operation as one of the three kings. *Id.*

at 794-95. The gang protected its drug-trafficking activity by using younger members to provide security with guns provided by the gang. *Id.* at 794. The gang also protected its drug operation by intimidating witnesses, shooting at police officer, and collecting debts through violent means. *Id.* In his role as leader, Thompson ordered one gang member killed, whom he suspected of cooperating with law enforcement and another shot for violating gang rules. *Id.* at 796.

### *Charges and Conviction*

On February 08, 2005, defendant Marvel Thompson and 45 other defendants were charged in a 49-count superseding indictment stemming from their involvement in the Black Disciples drug distribution network. R. 513.[1] On March 29, 2005, Thompson entered a "blind" plea to Count One, the conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine, one kilogram of heroin, and 50 grams of cocaine base. R. 736, PSR 12. In his plea, Thompson was unwilling to admit to all the conduct outlined in the government's factual basis, but rather, admitted selling approximately 29 kilograms of powder cocaine and one kilogram of heroin during 2004 to other members of the conspiracy, knowing they planned to resell the drugs. Cv. R 52 at 5.[2] Thompson's counsel advised the court that Thompson's plea to Count One was made with the following reservations, (1)

---

1 Thompson was originally charged with multiple defendants on August 31, 2004. R. 338. The following citations are used in this response: the record in the underlying case 04 CR 461 is identified as "R.__," the record in his §2255 petition is identified as "Cv R__," the sentencing transcript is identified as "S. Tr. __, " and citations to the PSR are identified as "PSR__."

2 Cv R 52 is the memorandum opinion and order which cites defendant's change of plea hearing transcript at pages 22-24. The government does not presently have possession of the underlying transcript.

that he denied he was involved with crack cocaine; and (2) his involvement in the conspiracy was limited to two named codefendants. Cv.R 53 at 3.

### Sentencing

Prior to sentencing, the probation officer prepared a presentence investigation report which contained the officer's sentencing guidelines calculations. The probation officer found Thompson responsible for trafficking the following drug quantities: 30 kilograms of heroin, 150 kilograms of cocaine, and 1.5 kilograms of cocaine base (crack cocaine). PSR 12. This corresponded to a base offense level of 38, pursuant to U.S.S.G. §2D1.1(a). *Id.* Although Guideline Application Note 6 provides that multiple drug types are to be converted and added together, the PSR noted that in this case no conversion was necessary as "as any one of the drugs which was distributed resulted in the application of the highest offense level," which was level 38. PSR 12.

Thompson's sentencing hearing spanned two days during which the government presented substantial evidence that, as king of the Black Disciples, Thompson coordinated the drug distribution conspiracy that provided drugs for gang members to sell from more than 15 drug-selling locations, made thousands of dollars a day from drug sales, collected payments from sellers, laundered drug money through real estate he owned, resolved disputes between gang members, and disciplined those who broke gang rules. *White* at 795.

This court found that Thompson was responsible for distributing an amount of heroin, powder cocaine, and cocaine base which resulted in a base offense level of 38. S. Tr. 190. The base offense level was increased by four levels for Thompson's role

3

in the offense as a leader organizer, two levels for possessing and using a weapon, and two levels for obstruction of justice. He received no reduction for acceptance of responsibility. The final offense level was level 46 (38+4+2+2), however, the maximum guideline was 43. Thompson's criminal history of category of I resulted in a guideline range of life imprisonment. The statutory maximum sentence was life imprisonment. The district court sentenced Thompson to 540 months imprisonment, followed by 5 year's supervised release. R. 1774, (S.Tr.228).

## *Post-Sentencing Proceedings*

On May 8, 2007, Thompson filed a notice of appeal, challenging his sentence. R. 1775. *United States v Thompson,* 582 F.3d 787, (7th Cir. 2009). On appeal, Thompson argued that the district court erred by applying enhancements for leadership, possession or use of weapons, and obstruction. *Id.* On December 11, 2009, the Seventh Circuit rejected Thompson's claims and affirmed his sentence. R. 2118, 2120.[3] On June 1, 2010, the Supreme Court denied Thompson's petition for a writ of certiorari. *Thompson v. United States*, 130 S.Ct. 3371 (2010).

On May 24, 2011, Thompson filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Cv. R. 1.[4] Counsel later appeared on Thompson's behalf and sought to file supplements to the motion to vacate. Cv. R. 15, 23, 29. In essence, Thompson claimed his plea was involuntary, the government

---

3  During the pendency of his appeal, Thompson filed a motion pursuant to Fed.R.Crim.P. 41(g), seeking return of $300,000 and property seized by the government. *Thompson v.United States*, 719 F. Supp 2d 977 (2010). Thompson appealed the ruling. The Seventh Circuit rejected his claim noting that his claim of an oral promise to return the funds were inconsistent with his plea colloquy. *Thompson v. United States,* 431 F. App'x 491, 493 (7th Cir. 2011).
4  Filings in this matter were made in civil case number 11 cv 3454.

breached its agreement with him, and his lawyers were ineffective. On June 18, 2012, this Court denied the motion, dismissed the case, and denied a certificate of appealability. Cv. R. 51, 52. Defendant filed a notice of appeal, (Cv. R. 55), and on November 14, 2013, the Seventh Circuit, after issuing a certificate of appealability as to certain issues,[5] affirmed the judgment of the district court. Cv. R. 75, 76, *Thompson v. United States*, 732 F.3d 826 (7th Cir. 2013). On March 3, 2014, the Supreme Court denied Thompson's petition for a writ of certiorari. *Thompson v. United States*, 134 S.Ct. 1507 (2014).

On February 3, 2015, defendant filed two motions for relief pursuant to Fed R. Civ. P. 60 (b) Cv. R. 81, 82. In seeking to alter the result of his § 2255 petition, defendant claimed the government possessed evidence that "refuted" status as king of the Black Disciples, and he implicitly denied his status as such. CV. R. 4, 81, 82. On March 30, 2015, the district court denied these motions. Cv. R. 87. On May 6, 2015, defendant filed a notice of appeal. Cv. R. 89. On February 17, 2016, the Seventh Circuit denied Thompson's request for a certificate of appealablilty. Cv. R. 101.

On September 27, 2017, Thompson filed his third motion pursuant to Fed R. C. Pro. 60(b)(6). Cv. R. 103. On January 25, 2018, the district court denied this motion as a successive motion under 28 U.S.C. § 2255 and untimely as a motion under Rule 60. Cv. R. 112. On May 4, 2018, Thompson filed a notice of appeal. Cv. R. 117. On

---

5  The Seventh Circuit issued a certificate of appealabilty on two issues: whether defendant's trial attorney (J.F.) effectively counseled him as to the consequences of pleading guilty to a conspiracy, and whether defendant's plea was knowing and voluntary.

5

March 12, 2019, the Seventh Circuit denied Thompson's motion for rehearing. Cv. R. 123, 124.

***Thompson's Motion for Relief Under the First Step Act***

On April 28, 2020, Thompson filed a motion seeking a reduction of his sentence to "time served" pursuant to § 404 of the First Step Act. R. 2746.

## ARGUMENT

## I.    Applicable Law

On August 3, 2010, Congress enacted the Fair Sentencing Act ("FSA"), which reduced the disparity in the treatment of crack cocaine and powder cocaine offenses. *See* Fair Sentencing Act, Publ. L. No. 111-220, 124 Stat. 2372 (2010). Under the FSA, statutory penalties for drug offenses involving crack cocaine were reduced by increasing the quantity of crack cocaine necessary for increased statutory minimums and maximums.

In compliance with the FSA, the United States Sentencing Commission issued a series of amendments to the United States Sentencing Guidelines Manual which had the effect of reducing the penalties for offenses involving crack cocaine by raising the drug quantity thresholds for application of the staggered base offense levels set forth in U.S.S.G. § 2D1.1(c). The amendments implementing these reduced penalties were Amendment 748, which reduced the base offense levels for offenses involving various amounts of crack cocaine on a temporary basis; Amendment 750, which made these reductions permanent; and Amendment 759, which made these changes retroactive. U.S.S.G. Manual app. C, Amendment 748 (2010); U.S.S.G. Manual app.

6

C, Amendments 750 and 759 (2011); *see also United States v. Bailey*, 777 F.3d 904, 906 (7th Cir. 2015) (the Sentencing Commission implemented the FSA with Amendment 748 to the guidelines).

Section 404 of the First Step Act of 2018, effective December 21, 2018, makes retroactive the portions of the FSA that lowered the threshold quantities triggering different statutory penalties for certain offenses involving crack cocaine. The First Step Act applies to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010," and provides that, in such cases, a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." This provision grants discretion to the sentencing court, but does not require the court to reduce sentences of eligible defendants.

## II. Thompson Is Ineligible for Relief Because His Statutory Penalties Were Not Modified by the Fair Sentencing Act.

Section 404(b) of the FSA provides that a defendant is not eligible for relief on the count of conviction unless he can establish that this Court "imposed a sentence for a covered offense." Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." As relevant here, Section 2 of the Fair

Sentencing Act modified the penalties in 21 U.S.C. § 841(b)(1)(A) and (B) for offenses involving cocaine base or "crack." Specifically, the statutory threshold in § 841(b)(1)(A)(iii) for a sentence of at least 10 years and up to life imprisonment is now 280 grams or more of crack. At the time of defendant's plea and sentencing, that statutory threshold was 50 grams or more of crack.

In *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020), the Seventh Circuit interpreted § 404's definition of a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." The court held that "the statute of conviction alone determines eligibility for First Step Act relief," and found that the defendant's conviction for conspiring to distribute crack cocaine was a covered offense under the plain language of the statute, "because the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations."[6]

Here, defendant was charged in Count one with, among other offenses, conspiring to possess with intent to distribute, and to distribute, controlled substances, namely, more than five kilograms of mixtures containing cocaine, more than fifty grams of mixtures containing cocaine base in the form of crack cocaine, and

---

[6] In *Shaw,* the government argued that eligibility under the FSA turns on the quantity of crack cocaine involved in the offense. The government preserves the same argument here for possible further review. In this case, the defendant admitted to conspiring to possess and distribute more than 1 kilogram of heroin and 29 kilograms of powder cocaine, and the PSR found and the evidence showed him responsible for possessing and distributing 1.5 kilograms of crack cocaine. Thus, defendant's "violation" involved a quantity of crack that would have triggered the same penalty before and after enactment of the Fair Sentencing Act, defendant's "violation" is not one for which the statutory penalties were modified by the Fair Sentencing Act and thus not a "covered offense."

8

more than one kilogram of mixtures containing heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii), all in violation of 21 U.S.C. § 846. Based on this charge, defendant faced statutory penalties of ten years to life under 21 U.S.C. § 841(b)(1)(A)(i) (for conspiring to possess and distribute 1 kilogram or more of heroin); § 841(b)(1)(ii) (for conspiring to possess and distribute 5 kilograms or more of cocaine); and under § 841(b)(1)(iii) (for conspiring to possess and distribute 50 grams or more of cocaine base).

Defendant pleaded guilty to Count One without a plea agreement. At the time of his plea, defendant admitted to having conspired to distribute a total of 29 kilograms of powder cocaine and 1 kilogram of heroin in 2004, knowing that the purchasers intended to resell it; he declined to admit that he conspired to distribute or possess with intent to distribute, crack cocaine. *See* Cv. R. 53 at 3, 5; R. 52 at 5 (denying he was involved with crack cocaine).

Both before and after the effective date of §§ 2 and 3 of the Fair Sentencing Act, the statutory penalty for offenses involving one kilogram or more of heroin was ten years to life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A)(i), and the statutory penalty for offenses involving 5 kilograms or more of powder cocaine was ten years to life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A)(ii). Because neither section 2 nor 3 of the Fair Sentencing Act modified the statutory penalties for violations of 21 U.S.C. § 841(b)(1)(A)(i) or § 841(b)(1)(A)(ii), the violations defendant admitted to having conspired to commit, the statutory penalty for the offense charged

in Count One was not modified by the Fair Step Act, and therefore defendant's conspiracy conviction is not a "covered offense."

In *Shaw*, the Seventh Circuit held that the statute of conviction, rather than the defendant's specific offense conduct, controls a defendant's eligibility for relief under § 404 of the First Step Act and, therefore, the quantity of crack charged in indictment and found by the jury or admitted by the defendant—rather than the quantity of drug for which defendant was held accountable at sentencing—is determinative. Here, defendant was charged with, and convicted of, conspiring to possess with intent to distribute, and to distribute, heroin and powder cocaine. Based solely on his conviction for conspiring to possess and distribute more than 1 kilogram of heroin—or based solely on his conviction for conspiring to possess an distribute more than 5 kilograms of cocaine—defendant was subject to a statutory sentencing range of 10 years to life imprisonment. That statutory sentencing range would remain the same no matter what type and quantity of controlled substances defendant and his co-conspirators *also* possessed and distributed; likewise, it would remain the same regardless of whether defendant was held accountable at sentencing for any quantity of any drug beyond that which was charged in the indictment. Based on indictment, defendant faced a statutory penalty that was unaffected by the Fair Sentencing Act, and he is ineligible for relief under § 404.

## II. This Court Should Exercise Its Discretion to Deny Thompson Relief.

Even if the Court finds defendant eligible, it should nevertheless exercise its discretion, consistent with § 404(c) of the First Step Act, to deny Thompson's

10

requested relief. The court's decision whether to reduce the sentence of an eligible defendant pursuant to the First Step act is discretionary. Pub. L. No. 115-391 § 404(c). To determine whether to exercise its discretion to reduce the defendant's sentence, the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a). Based on an evaluation of those factors at sentencing, the court imposed a sentence of 540 months' imprisonment. Defendant seeks release after having served approximately 1/3 of his sentence.

### Consideration of Section 3553 Factors

*Nature and Circumstances of the Offense*

For approximately 15 years, Thompson led a street gang that was responsible for distributing vast quantities of narcotics and wreaking havoc on the lives of people in his community. After presiding over the trial of a codefendant and conducting sentencings for Thompson and his codefendants, this court observed that the nature and circumstances of his offense "could hardly be worse." S. Tr. 225-226. That fact remains true today. In describing Thompson's role in the drug distribution conspiracy, this court found ". . . it was his skill, unfortunately, that really made it take off and become as big as it did, that this is a crime against the south side. This is the kind of crime that keeps people from having a chance." S. Tr. 225.

*History and Characteristics of the Defendant*

Defendant lied and perjured himself before this court when he felt it would benefit him. Thompson lied about his role as king of the Black Disciples and disputed the degree to which he engineered the gang's drug trafficking operations. Furthermore although the overwhelming evidence revealed that he directed a massive drug organization for 15 years, the only transactions he admitted involved more than 1 kilogram of heroin and 29 kilograms of cocaine. *White* at 797. The *White* court described Thompson's testimony "that he had no idea what coconspirators would do with the drugs he sold them" as "incredulous." *Id.* As a leader, his role was critical in the fate of his 45 codefendants. As a leader of criminal activity he perpetuated a cycle of violence and lawlessness in his community. His unwillingness

12

at the time of his plea to any involvement in distributing crack cocaine is ironic given the relief he now seeks.

This court previously recognized that despite his difficult upbringing, others who suffered the same conditions "don't decide to become criminals, and they become successful, and they certainly don't become leaders of gangs and cynical people who do everything to undermine a community." S. Tr. 225. Rather, as the court found, the defendant used his "incredible leadership qualities" generally for bad purposes. S. Tr. 226. Thompson controlled the gang and narcotics operation and thereby should be held to a greater degree of culpability than others under his direction.

As this Court well observed, despite the affection of his family and acting as a father for his own children, Thompson presented the opposite influence to others in the community. Then, as now, his proffered willingness to reach out to schools as a gang leader presents a dangerous and cynical message to other children.

*Need to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment*

This court heard evidence that the defendant ordered the shooting, ordered beatings, and that a gang-supplied weapon for the protection of the drug distribution operation was used to shoot a police officer. In emphasizing the seriousness of the offense, this court stated: "I remember from the trial that one of the sad things . . . I believe it was Mr. Hall, but I'm not sure, talking with this one died, this one died, this one died, this one died." S. Tr. 227. The defendant, as leader of this organized criminal activity, is the person responsible for directing the gang activity and is

directly responsible for all of the ensuing harm.   The seriousness of the offense is demonstrated by the death, violence, addition, and desperation that followed in its wake.

If Thompson were sentenced today, given the nature of the known drug quantity involved in the offense, he would face the same statutory penalties and the essentially the same guideline range as he did at the time of his original sentencing. Granting him release would give him a windfall unavailable to other defendants sentenced both before and after the First Step Act, and would be inconsistent with "the need to avoid unwarranted disparities" among similarly situated offenders under 18 U.S.C. §3553(a)(6), and the need for the sentence to "reflect the seriousness of the offense, "promote respect for the law," and provide just punishment for the offense" under § 3553(a)(2)(A). *See Dorsey* v. *United States*, 567 U.S. 260,  276-79 (2012) (expressing the importance of consistency in sentencing similarly situated  offenders when determining the retroactive application of a statutory amendment).

*To afford adequate deterrence*

As this court previously noted, the sentence imposed in this case has to be sufficient to deter not only this defendant but others that are drawn to gang life and are inspired by the example of Thompson and others.   Thompson led one of the largest and most violent gangs in the city.  Gang activity and the gang lifestyle he championed continues to plague the communities he victimized.  The gang he ran, continues, albeit merged, with another gang.  His leadership role in the criminal enterprise and the distribution operation differentiates him from others convicted of

14

trafficking, or those for whom possession of smaller amounts of crack cocaine resulted in sentences the First Step Act sought to address.

*Protect the public from other crimes*

The evidence at his sentencing established Thompson ordered a gang member killed whom he suspected of cooperating with law enforcement and another gang member shot for violating gang rules. *White* at 796. Additionally, a coconspirator, while protecting the drug operation, shot a police officer with a gang-supplied weapon. *Id.* Defendant's willingness to engage in violence and his more than 15-year drug distribution operation clearly demonstrates his danger to the public. Nothing that has transpired during the course of his sentence has changed that.

*Conduct While in Custody*

Thompson argues that he should receive a sentence reduction because he has been a model prisoner, having had taken classes and committed only one disciplinary infraction in his 16 years of incarceration. Defendant's good behavior in prison is commendable, it is also required—and rewarded by good time credit. Moreover, it is insufficient to overcome other factors, including the need to avoid unwarranted disparities between defendant and others, such as those convicted of conspiracy to possess and distribute heroin only, who have no opportunity to have their sentences reduced based on good behavior in prison.

Thompson also submits letters expressing his family's support and the prospect of future employment as a community outreach worker in connection with his Pastor. At the time of his sentencing, Thompson also professed to engaged in

outreach activity in schools as well. The court appropriately expressed concern then and it should do so now. If nothing else, this court should not find the prospect of potential future employment as a community outreach worker compelling. It is important also to recall that as recently as 2015, Thompson, in court filings, continued to dispute his leadership role in the gang. Such a course of conduct is inconsistent with the proffered image that he is now rehabilitated and meriting immediate release.

Finally, Thompson asserts that on December 2019, the BOP considered him as a minimum risk of recidivism. It is unclear what rubric or considerations when into this determination, and consequently it is difficult to place much weight on this administrative entry. If it was based upon his criminal history category of I, as the court well knows, his criminal history category inadequately described defendant's actual criminal history. The United States Sentencing Commission reports the re-arrest rates for drug trafficking offenders decreases from 47% at 36-40 years of age to 40.3% at 41-50 years of age, but remains a startlingly high 25.9% at 51-60 years.[7] The recidivism rates for inmates released after 60 years of age drops to 16.5%. Thompson is currently listed as 51 years old. A gang kingpin of 50 years of age presents a significantly greater risk to the community than a typical drug trafficker. In weighing the protection of the public and risk that the Thompson presents, his claimed lack of recidivist potential is unpersuasive.

---

[7] https://www.ussc.gov/research/research-reports/recidivism-among-federal-drug-trafficking-offenders

The defendant currently served 16 years of a 45-year sentence. His current projected release from FCI Pekin – a medium security facility- is October 2042. His request for immediate release would reduce his sentence by at least 22 years. Granting such a request would deprecate the nature, scope, and duration of his conduct, and unnecessarily place the larger community at risk. A reduction of this magnitude would result in an unmerited windfall and is not justified by his past or current conduct. Such treatment would present the risk of disparity with other similarly situated individuals.

In light of these facts, this Court should exercise its discretion to deny Thompson relief, even if such relief is statutorily permitted.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Thompson's motion for relief under Section 404(c) of the First Step.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   /s/Patrick King
Assistant United States Attorney