IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 04 CR 464 |
| v. | ) | |
| | ) | Honorable Elaine E. Bucklo |
| MARVEL THOMPSON | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF A REDUCED SENTENCE UNDER SECTION 404 OF THE FIRST STEP ACT

Marvel Thompson, by the Federal Defender Program and its attorney, Maria Teresa Gonzalez, has moved for a reduction of sentence pursuant to Section 404 of the First Step Act. (Docket No. 2746.) The government argues he is not eligible for relief under the First Step Act and that a sentence reduction is not warranted even if he were eligible for relief. (Docket No. 2758.) For the reasons explained below, this Court should reduce Mr. Thompson's sentence to time-served.

## Argument

In considering a motion for a reduced sentence under the First Step Act, a judge must determine: (1) whether the defendant is eligible for a sentence reduction under the Act, and (2) whether the sentence should be reduced in the judge's discretion. *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). As explained below, Mr. Thompson is eligible for a reduced sentence and this Court should reduce his sentence to time-served.

## I.     Mr. Thompson is eligible for a reduced sentence under Section 404.

The First Step Act of 2018 provides in Section 404 that "a court that imposed a sentence for a covered offense may, on motion of … the defendant … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in

effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. 115-391, § 404. The term "covered offense" is defined as "a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010." *Id.*

The government argues (1) this Court did not impose a sentence for a "covered offense," and (2) the statutory penalties for Mr. Thompson's non-crack cocaine portion of his multiple-drug conspiracy remain the same. (Gov't Response at 6-10.) The government is wrong.

## A. This Court imposed a sentence for a covered offense and may impose a reduced sentence.

The government argues Mr. Thompson is not eligible for relief because this Court did not impose a sentence for a "covered offense." (Gov't Response at 7-10.) It argues that, at his change of plea hearing, Mr. Thompson admitted to selling heroin and cocaine but "declined to admit" his involvement with crack cocaine. (*Id*. at 9.) Sections 2 and 3 of the First Step Act did not modify the statutory penalties for more than one kilogram of heroin and more than 5 kilograms of cocaine. (*Id*.) Therefore, according to the government, Mr. Thompson is not eligible for a reduced sentence.

Mr. Thompson's change of plea hearing confirms he was convicted of a crack cocaine offense. At the beginning of the hearing, the government advised the Court that all Mr. Thompson "would need to plead guilty to and to admit and acknowledge is that the conspiracy **as charged** in Count 1 existed […]." (Tr. of Change of Plea Hearing ("Plea Tr.") 2 (emphasis added).) This Court advised Mr. Thompson that he was charged with "conspiring and agreeing with others to knowingly and intentionally possess with intent to distribute and to distribute controlled substances, namely, in excess of five kilograms of mixtures containing cocaine, in excess of one kilogram of heroin, and **in excess of 50 grams of cocaine base, commonly known as crack**, as well as marijuana." (*Id*. at 14 (emphasis added).) After Mr. Thompson entered a "blind plea" to

Count One the government stated: "Judge, we believe, based on his statements and his admissions, that he admitted enough to plead guilty to Count 1 and has satisfied all, pled guilty to the elements of the conspiracy." (*Id*. at 25.) This Court expressed concern that Mr. Thompson did not understand the effect of his guilty plea[1] to which the government responded there were "disagreements in terms of sentencing guideline factors […]." (*Id*.) At the end of the hearing, this Court accepted Mr. Thompson's plea and found he was "in fact guilty **as charged** in Count 1 of the superseding indictment […]." (*Id*. at 32 (emphasis added).) This Court then entered a judgment of guilty to Count One of the superseding indictment. (Docket No. 736.) By pleading guilty to Count One as charged, Mr. Thompson was convicted of a conspiracy involving crack cocaine, powder cocaine, and heroin.

Additionally, Mr. Thompson did not need to admit to the crack cocaine portion of Count One in order to get relief under the First Step Act. At least one other court has held that a defendant charged with conspiracy involving crack cocaine and another drug is eligible for relief under the First Step Act even if the defendant did not allocute to the crack cocaine. *United States v. Medina*, No. 3:05-cr-58, 2019 WL 3766392 (D. Conn. Aug. 9, 2019). In *Medina*, the defendant was convicted for conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack cocaine and five kilograms or more of powder cocaine. *Id*. at *1. At the change of plea hearing, Mr. Medina admitted to powder cocaine but denied any crack cocaine involvement.[2] *Id*.

---

[1] This Court expressed concern Mr. Thompson did not understand the nature of the offense but ultimately recognized that Mr. Thompson acknowledged the nature of the charges against him. *Thompson v. United States*, 891 F. Supp. 2d 945, 955 (N.D. Ill. June 18, 2012) (quoting Mr. Thompson: "I understand the nature of the charges, and I'm accepting my responsibility of those regardless of what I'm saying.")

[2] Unlike Mr. Medina, who specifically denied his involvement with crack cocaine, Mr. Thompson only admitted to selling powder cocaine and heroin. The change of plea transcript does not support the government's position that Mr. Thompson's counsel advised the court that Mr. Thompson "denied" his involvement with crack cocaine. (Gov't Response at 2-3.) As the government conceded at sentencing, Mr. Thompson did not necessarily deny his involvement with crack cocaine, but instead admitted his involvement with powder cocaine and heroin. (Sentencing Transcript ("S. Tr.") 162.)

at *5; *see also United States v. Medina*, 2019 WL 3769598, at *1 n.1 (D. Conn. July 17, 2019).[3]

In opposing a motion for a reduced sentence under the First Step Act, the government argued Mr. Medina did not qualify because he did not plead guilty to a crack cocaine offense. *Medina*, 2019 WL 3766392, at *3. The district judge disagreed and held the defendant "was entitled to relief despite the record of the plea colloquy revealing that Medina only pled guilty to the powder cocaine offense […]." *Id*. Even though the defendant did not expressly allocute to crack cocaine, "the indictment, the transcript of the sentencing, and the Judgment all reflect that Medina was still charged with, convicted of, and sentenced to a crack cocaine offense." *Id*.

Similarly, even though Mr. Thompson did not admit to crack cocaine, the record shows Mr. Thompson was convicted of and sentenced for a crack cocaine offense. In the government's version of the offense dated May 19, 2005, the government wrote: "Evans, Herbert, Stewart and Thompson all pled guilty to Count 1 (drug conspiracy involving **in excess of 50 grams of crack cocaine**, 5 kilograms of cocaine and 1 kilogram of heroin)." [4] (Gov't Version of the Offense at 1 (emphasis added).) In the presentence investigation report, the probation officer found Mr. Thompson responsible for trafficking 30 kilograms of heroin, 150 kilograms of cocaine, and **1.5 kilograms of cocaine base (crack cocaine)**. (PSR at 12 (emphasis added).) This Court found Mr. Thompson responsible for distributing heroin, powder cocaine, and **cocaine base**. (S. Tr. 190 (emphasis added).)

Mr. Thompson's indictment, change of plea hearing, sentencing, and judgment all confirm that Mr. Thompson was charged with, convicted of, and sentenced for a crack cocaine offense.

---

[3] This Court previously relied on *Medina* when it reduced Derrick White's multiple-object conspiracy sentence pursuant to Section 404 of the First Step Act. *United States v. White*, No. 04-cr-464-30, 2020 WL 1888981 (N.D. Ill. Apr. 16, 2020).

[4] The government's version of the offense is attached to the PSR. (Docket No. 2066 at 41.)

The government could have charged separate conspiracies and charged crack cocaine alone in one count, but it charged all conspiracies in the same count. Mr. Thompson was convicted and sentenced to a covered offense.

**B. A multiple-objective conspiracy conviction does not preclude eligibility under the First Step Act.**

The government further argues Mr. Thompson is not eligible for relief because the statutory penalties for offenses involving one kilogram of heroin and five kilograms or more of powder cocaine were not altered by the Fair Sentencing Act. (Gov't Response at 9.)

The Seventh Circuit has not decided whether a defendant is eligible for a reduced sentence under the First Step Act when he is charged with conspiracy to distribute crack cocaine and another substance. This Court, however, reduced the sentences of Mr. Thompson's three co-defendants who were convicted on the same count as him. *See United States v. Coates,* No. 04-cr-464-4, 2020 WL 2745974 (N.D. Ill. May 27, 2020); *United States v. White*, No. 04-cr-464-30, 2020 WL 1888981 (N.D. Ill. Apr. 16, 2020); *United States v. Evans*, No. 1:04-cr-00464-6, Dkt. No. 2694 (N.D. Ill. Oct. 18, 2019). In reducing their sentences, this Court followed other Courts of Appeals in holding that a multiple-objective conspiracy conviction does not preclude eligibility under the First Step Act. *See Coates*, 2020 WL 2745974, at *2 (citing *See United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020) ("[W]e see nothing in the text of the Act requiring that a defendant be convicted of a single violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act."); *see also United States v. Smith*, 954 F.3d 446, 450 & n.5 (1st Cir. 2020); *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019).

Mr. Thompson's multiple-objective conspiracy is a "covered offense" within the meaning of Section 404 of the First Step Act. Therefore, this Court has authority to reduce Mr. Thompson's sentence.

**II.    This Court should reduce Mr. Thompson's sentence to time-served.**

The government asks this Court to exercise its discretion and deny Mr. Thompson's request for a reduced sentence. (Gov't Response at 10-17.) In analyzing sentencing factors set forth in 18 U.S.C. § 3553(a), the government exclusively relies on Mr. Thompson's past conduct. This reply addresses those concerns regarding his past conduct and asks this Court to consider his conduct while incarcerated. Such conduct indicates successful rehabilitation and should assuage concerns about recidivism.

When determining a prisoner's Recidivism Risk Level pursuant to the First Step Act, the Federal Bureau of Prisons (BOP) uses a Risk and Needs Assessment System (RNAS) called the Prisoner Assessment Tool Targeting Estimated Risk and Need (PATTERN). The RNAS sorts prisoners into one of four Risk Level Categories (RLCs) of increasing recidivism risk: (1) minimum; (2) low; (3) medium; (4) high. In doing so, PATTERN considers a total of fifteen factors of which four are static and eleven are dynamic (*i.e.*, they develop and change over the course of a prison term).[5] The dynamic factors include: (1) any infraction convictions in the current term of incarceration; (2) serious and violent infraction convictions in the current term of incarceration; (3) any infraction-free periods in the current term of incarceration; (4) serious or violent infraction-free periods in the current term of incarceration; (5) number of programs committed; (6) work programming; (7) drug treatment while incarcerated; (8) non-compliance with financial

---

[5] U.S. Dept. of Justice, Office of the Attorney General, *The First Step Act of 2018: Risk and Needs Assessment System – Update*, (Jan. 2020), https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf. It is unclear what effect (if any) the BOP updated PATTERN would have had on Mr. Thompson's risk level calculation on December 19, 2019. (Motion at Exh. C.) Regardless, the update marginally changed the dynamic factors. The prior dynamic factors included: "(1) Infraction convictions (any); (2) Infraction convictions (serious and violent); (3) Number of programs completed (any); (4) Number of Technical or Vocational Courses; (5) Federal Prison Industry employment (only for women); (6) Drug treatment while incarcerated; (7) Drug education while incarcerated; (8) Non-Compliance with financial responsibility (only for women); (9) Education Score (only for women); (10) History of Violence; (11) History of Escape."

responsibility [for women only]; (9) history of violence; (10) history of escape; and (11) education score [for women only]. Given Mr. Thompson's gender identity, we see that nine dynamic factors apply to his recidivism risk calculation under PATTERN. Eight of those nine factors clearly militate towards a lower risk assessment for Mr. Thompson. First, he has committed only one non-violent, minor infraction. Second, he has earned his GED and completed an extensive list of programs, vocational and technical courses, and drug education. Finally, he lacks a history of violence or escape. These factors were significant in the BOP's determination that Mr. Thompson has a "minimum" (*i.e.*, the lowest possible) risk level.[6] Thus, even setting aside the static factors that the government scrutinized in its Response, several factors support the BOP's determination that Mr. Thompson poses a minimum risk of recidivism.

Turning to the four static factors, PATTERN considers the following: (12) age at the time of assessment; (13) the instant violent offense; (14) whether the prisoner is a sex offender; and (15) criminal history score.[7] As an aging, non-sex offender, Mr. Thompson likely benefits from two of those factors. It is with regard to one of those two other factors – criminal history score – that the government has scrutinized the BOP's assessment. (*Id*. at 16.) Although Mr. Thompson's criminal history score is factored into the BOP's risk assessment, as the government suspected and as noted above, it is but one of fifteen factors. Indeed, it is only one of four static factors. Its consideration amongst fourteen other factors is in accordance with the worry, as articulated in the government's Response, that a criminal history score often does not tell the whole story so to speak. Thus, when properly contextualized, the government's concerns are not troubling.

---

[6] *Id*. at 9-11. Although the exact weights of each factor are unknown, the BOP has noted that the factors are "scientifically-weighted based on their predictability of reduced recidivism" and that "[t]he process of weighting the variables was based on scientific research and analysis."

[7] *Id*. at 11.

Lastly, the government calls this Court's attention to Mr. Thompson's age and the re-arrest rate for those in his age group. (*Id*. at 16.) To be sure, the government is correct that the re-arrest rate for drug trafficking offenders aged fifty-one to sixty is 25.9%.[8] Nevertheless, as outlined above, this age-group recidivism rate is taken into account in PATTERN. Thus, the government's cumulative presentation of this information serves only to distort the perceived risk of recidivism.

In summary, Mr. Thompson was assigned a "Minimum" Recidivism Risk Level as the result of technical expertise and applied empirical studies; on the other hand, the government's scrutiny is misplaced and unsupported. When designing and adopting PATTERN, the BOP consulted experts and engaged in a lengthy public comment period.[9] Since then, PATTERN has been modified on account of even more consultations and comments.[10] Furthermore, the scrutiny given to the role of Mr. Thompson's criminal history score is overblown given that it constitutes only one of fifteen factors.

Moving beyond the dispute concerning his Recidivism Risk Level, Mr. Thompson has made great strides towards rehabilitation and is therefore unlikely to recidivate. While incarcerated, Mr. Thompson has applied himself. His most recent progress report states that he "consistently receives good work performance evaluations." (Motion at Exh. B.) Further, his educational endeavors are indicative of a man seeking to better himself. Most notably, he has completed several self-improvement programs, such as "Positive Thinking," "Anger Management," "Life Balance," and "Rational Thinking." (*Id*. Exh. A & B.) He has also completed

---

[8] United States Sentencing Commission, *Recidivism Among Federal Drug Trafficking Offenders*, (Feb. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170221_Recidivism-Drugs.pdf.

[9] *See* Office of the Attorney General, *The First Step Act of 2018: Risk and Needs Assessment System*, (July 2019), https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

[10] *See* Office of the Attorney General, *supra*, note 1.

some more civic-minded programs, such as "Applied Ethics," "Etiquette and Communications," and "Violence Prevention." (*Id*.) Lastly, he has sought to obtain new employable skills. His skills-based programming is most extensive and ranges from carpentry and Spanish to marketing and small business management. (*Id*.) The programming, of which some examples are included above, is so extensive that, in addition to the more than thirty certificates attached in his Motion for Reduced Sentence Under Section 404 of the First Step Act (*Id*. at Exh. A), Mr. Thompson asks that this Court consider roughly thirty other programming certificates attached to this Reply. (Exhibit C.)

Mr. Thompson's efforts, as outlined above, are important because, as the National Institute of Justice found, "participation in education programming reduced the odds of recidivism by 43 percent and [ ] participating in secondary degree programs yielded a 30 percent decrease in recidivism."[11] To be sure, PATTERN takes the effects of such programming into account. Accordingly, Mr. Thompson's work is only outlined to offer the Court a more holistic perspective as to how seriously he has committed himself to rehabilitation.

At fifty-one-years-old, Mr. Thompson has had sixteen years to grow and better himself since his arrest in 2004; it is his hope that this Court can appreciate just how much work he has put in towards pursuing that growth. As a result of those efforts, he is now a different person with a new perspective and a new set of values. In light of that development, the government's focus on his behavior from more than sixteen years ago is unfortunate.

Moreover, should this Court reduce Mr. Thompson's sentence to time-served, he would be released to an extensive support network and caring community that would ensure his continued

---

[11] National Institute of Justice, *The Use and Impact of Correctional Programming for Inmates on Pre-and Post-Release Outcomes*, (June 2017) (Citing Davis, et al., *Evaluating the Effectiveness of Correctional Education: A Meta-Analysis of Programs that Provide Education to Incarcerated Adults*, (2013)), https://www.ncjrs.gov/pdffiles1/nij/250476.pdf.

growth. Most importantly, Mr. Thompson enjoys the loving support of his family here in Chicago. This Court has received letters from his wife, sister, brother, grand-uncle, nieces, cousins, and children. (Motion at Exh. E.) In addition to his family's support, Mr. Thompson can turn to his community. This Court has received letters from a minister, the president of a charitable and educational organization, and a young professional who was mentored by Mr. Thompson. (*Id.*) Indeed, one pastor has even guaranteed Mr. Thompson a job upon release.

Additionally, Mr. Thompson would be unlikely to return to a life of crime for lack of opportunity. In his letter to this Court, Mr. Thompson states that his cooperation with the government has "fully and finally severed [his] criminal ties." (Exhibit A.) This assessment is supported by numerous academic studies.[12] Therefore, he will no longer have the opportunity to engage in the conduct that the government alleges in its Response. Thus, considering the arguments above, the likelihood that Mr. Thompson recidivates is remote.

Finally, when addressing Mr. Thompson's rehabilitation and recidivism risk in its Response, the government failed to cite many of its claims. First, the government argues that "[n]othing that has transpired during the course of his sentence" has changed Mr. Thompson's dangerousness to the public. (Gov't Response at 15.) Second, it claims that "a gang kingpin of 50 years of age presents a significantly greater risk to the community than the typical drug trafficker." (*Id*. at 16.) Third, it claims that "[a reduction to time-served] would present the risk of disparity with other similarly situated individuals." (*Id*. at 17.) Invariably, the government offered no sources to support any of those claims. The lack of support for the last claim is particularly glaring because it is a motivating concern throughout the government's Response. Therefore, this Court

---

[12] *See, e.g.*, Bret D. Asbury, *Anti-Snitching Norms and Community Loyalty*, 89 Or. L. Rev. 1257, 1268 (2011) ("The tradition among criminals pursuant to which they do not give up their confederates when questioned by the police is both long-standing and well-known.").

should approach those claims with an appropriate skepticism, especially when they are offered against the BOP's technical expertise.

Despite the government's unsupported claim to the contrary, a reduction in Mr. Thompson's sentence would further the sentencing goal of uniformity. As for comparisons, the most immediate similarities can be drawn to Mr. Thompson's co-defendants: Kenyatta Coates, Derrick White, and Corey Evans. As noted in Part I of this reply, this Court has reduced the sentences for all three. *See Coates,* No. 04-cr-464-4, 2020 WL 2745974 (N.D. Ill. May 27, 2020); *White*, No. 04-cr-464-30, 2020 WL 1888981 (N.D. Ill. Apr. 16, 2020); *Evans*, No. 1:04-cr-00464-6, Dkt. No. 2694 (N.D. Ill. Oct. 18, 2019). Still, perhaps the most compelling similarities are shared with James Yates, a high-ranking member of the Gangster Disciples for whom this Court granted a reduced sentence under the First Step Act on April 22, 2020. For purposes of comparison, summaries of their respective conduct and sentencing dispositions are outlined below.

Mr. White was found guilty on the same count as Mr. Thompson and three additional counts. *United States v. White*, 582 F.3d 787, 800 (7th Cir. 2008). In addition to finding Mr. White guilty on Count One (the only count on which Mr. Thompson was convicted), a jury found him guilty of shooting and attempting to murder a Chicago police officer at a drug distribution site and two related gun counts. *Id.* At sentencing, this Court found him accountable for 150 kilograms of powder cocaine, 30 kilograms of heroin, and 1.5 kilograms of crack cocaine. (Docket No. 2731 at 2-3.) This Court sentenced him to 252 months' on Count One resulting in a total term of 372 months' imprisonment. (Docket No. 1576.) On April 16, 2020, this Court reduced Mr. White's sentence to time-served pursuant to Section 404 of the First Step Act. (Docket No. 2741.)

As for Mr. Evans, the second-highest ranking member of the Black Disciples, this Court found him accountable for trafficking at least 150 kilograms of cocaine, 30 kilograms of heroin,

and 1.5 kilograms of crack cocaine. (Docket No. 2689 at 1.) Mr. Evans' guidelines range was 360 to life and this Court sentenced him to 245 months. (*Id*. at 2.) When originally sentencing Mr. White, this Court placed emphasis on the § 3553(a) factors in imposing what this Court described as a "very lengthy sentence." (*Id*. at 3.) On October 18, 2019, this Court reduced Mr. Evans' sentence to time-served pursuant to Section 404 of the First Step Act. (Docket No. 2693.)

Mr. Coates' sentencing guidelines range was 360 months to life. (Docket No. 670-2 at 8.) In his plea agreement, Mr. Coates admitted to being a high-ranking member of the Black Disciples and accountable for more than 1.5 kilograms of crack cocaine, more than 150 kilograms of cocaine, and more than 30 kilograms of heroin. (*Id*. at 4.) He also admitted to the first degree murder of Richard Hemphill and second degree murder of Leroy "Shady Grady" Johnson and entered into an agreement with the Cook County State's Attorney to be sentenced to 20 years' imprisonment. (*Id*. at 15.) This Court, pursuant to a plea agreement, sentenced Mr. Coates to 262 months' imprisonment. (Docket No. 1591.) On May 27, 2020, this Court reduced Mr. Coates' sentence to time-served pursuant to Section 404 of the First Step Act. (Docket No. 2756.)

Most notably, compelling comparisons can be drawn between Mr. Thompson and Mr. Yates. Mr. Yates was convicted on, *inter alia*, multiple drug distribution counts. And, at sentencing, he was held accountable for at least 1.5 grams of crack cocaine. In sum, Mr. Yates was convicted on twenty three substantive narcotics counts. *United States v. Yates*, 208 F. Supp. 2d 959, 960 (N.D. Ill. July 11, 2002). As a Gangster Disciples "governor," Mr. Yates "had several hundred subordinates working for him selling cocaine." *Id*. at 961. When reducing Mr. Yates' life sentence to time-served after twenty-five years of incarceration, this Court emphasized Mr. Yates' productive endeavors towards rehabilitation while incarcerated and the strong community support

network that awaited him upon release. *See United States v. Parks, et al.*, No. 95-cr-510, Dkt. No. 2061 (N.D. Ill. Apr. 22, 2020).

Along with the foregoing reasons, this Court should consider the COVID-19 pandemic in addressing the § 3553(a) factors. 18 § U.S.C. § 3553(a)(2)(D) requires a court to consider "the need for the sentence imposed – … to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Mr. Thompson's diabetic condition puts him at increased risk of severe illness from COVID-19.[13] (Exhibit B.) Unfortunately, BOP's measures to prevent the spread of COVID-19 have not been successful. As of June 25, 2020, there are 1,249 federal inmates who tested positive for COVID-19.[14] Additionally, BOP's modified operation plan limits social visits, inmate movement, and has suspended all volunteer visits, including visits from religious advisors.[15] Under these modified operations, Mr. Thompson will be unable to continue receiving programming and rehabilitative resources, and instead, will be confined in his "assigned cells/quarters."[16]

## Conclusion

Wherefore, Mr. Thompson respectfully requests that this Court exercise its discretion under the First Step Act and reduce his sentence to time-served.

---

[13] The Centers for Disease Control and Prevention has found that people of any age who suffer from Type 2 diabetes mellitus are at increased risk of severe illness from COVID-19. *See* Ctrs. for Disease Control, *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 26, 2020).

[14] *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited June 26, 2020).

[15] *See* Fed. Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 26, 2020).

[16] Institution lockdown commenced on April 1, 2020 (Phase V) and was subsequently extended through May 18, 2020, (Phase VI) and again through June 30, 2020 (Phase VII).

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/ Maria Teresa Gonzalez*
Maria Teresa Gonzalez
Attorney for Defendant

Assisted by:
Kyle Benjamin Kent, Legal Intern
University of Chicago

FEDERAL DEFENDER PROGRAM
55 East Monroe Street, Suite 2800
Chicago, IL 60603
(312) 621-8300

# CERTIFICATE OF SERVICE

The undersigned, Maria Teresa Gonzalez, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## DEFENDANT'S REPLY IN SUPPORT OF A REDUCED SENTENCE UNDER SECTION 404 OF THE FIRST STEP ACT

was served pursuant to the district courts ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on June 26, 2020, to counsel/parties that are non-ECF filers.

By:     *s/ Maria Teresa Gonzalez*
        MARIA TERESA GONZALEZ
        FEDERAL DEFENDER PROGRAM
        55 E. Monroe St., Suite 2800
        Chicago, Illinois 60603
        (312) 621-8300

Exhibit A – Letter from Marvel Thompson

Marvel Thompson                          May 21 2020
Reg # 04028-748
FCI Pekin
P.O. Box 5000
Pekin IL 61555

Dear Honorable Judge Bucklo

    I am writing this letter to give you
some insite into the man I was and
the man I have become today.
    As you know my name is Marvel Thompson,
I am 51, will be 52 years of age in August
2020 and I have been incarcerated for
16 years.
    The only family support my mother and
her children enjoyed was that of her two
sisters and her mother (my mother and grand
mother have passed during my incarceration).
They often provided food and shelter when
possible. All of us were poor and therefore,
lived in the public housing projects in
Chicago, IL.
    At times growing up my family could
not pay our bills or otherwise support
ourselves. At times, because we could not

①

pay rent, we lived without the benefit of lights and/or gas. There were times, that I can remember vividly to this day, that our family's belongings were left on the curb of our streets when, because we could not pay our rent. we were suddenly evicted from the place where we lived. Such events marked my childhood and daily life with one traumatic event after another.

I never had any type of father-figure in my life and, at a young age, Started to look to others in my neighborhood for paternal guidance and acceptance. That is, I started to view men in the streets of my neighborhood as the father figures I never had in my life growing up.

Consequently, it was the men in the streets that had the most influence over me in my formative years.

Looking back, I believe that my mother did the best that she could for me with the limited knowledge and experience that she had as a single Mother at the age of Sixteen.

Like most young men in my situation and environment, I fell prey to the streets

and the people that live them. I foolishly came to believe that "street life" was socially and morally acceptable - and, indeed, was a legitimate goal with which to achieve my goal of never having to see the people I love go without or suffer as we did when I was a child. Through this misguided belief and means, I embarked on a path of illegal misdeeds that would eventually completely destroy not only my life, but the lives of every person I ever loved or cared about - including those in my community with whom I most identified based upon our common experience of living poor.

Looking back, the older men, I looked up to when I was younger. Were more naive then I was. They believed just as I once did that positive change can come from illegal means. I have come to know that - that is a illusion.

I can remember some things your Honor said at my sentencing like "Nobody is all one way, or maybe some people are, but your'e not." and when you used the word "Cynical" to discribe when I would visit the schools on behalf of some of the -

③

young men. I never looked at my conduct and presences with those young men as being cynical. I have come to learn that you were right. Although the visits and other support I gave may have done some good. I can see the young men thinking selling drugs and the street life made Marvel like this and I want to be just like him. The reason I say this is because after thinking things through, I have come to realize this is how I ended up in your Court room. I were them once before.

I have heard it said that "the road to hell is paved with good intentions." That saying resonate with me, particularly, as I parlayed my criminal endeavors to benefit not only my self but others by trying to help as many as I could in my community. In my mind (at the time) my criminal under-takings, and fruits thereof, were legitmately used to help pay rent for poorer families, pay for cloths for poorer children and buy them school supplies and otherwise aid, financially, those in need in my community.

④ It is not to say, however, that my folly is boundless as I have come to realize

that my actions were severely misguided and that you cannot, simultaneously, build up and destroy that which you purport to love.

At the age 52 (which I am closer too), after having spent 16 years in prison and sentenced to 4 and a half decades. I have had much time to reflect upon how naive and foolish I was to believe that any true good could come of my actions.

That is, I realize now that I was wrong in my beliefs and that my thinking errors have caused countless harm and did nothing to justify or otherwise lesson my crime in its degree or severity.

Consequently, living with the burden of this realization has caused me to grow and improve in unexpected and in innumerable ways. For instance, I now believe that my goals to help others is best achived by my pursuit of knowledge ~ knowledge that I can then share with those I love and care about the most or use to benefit them without having to resort to illegal means.

⑤ In particular, I have self-educated myself by several unconventional means—

learning carpentry, plumbing, electrical and other labor skills by watching videos and reading self study books on the same topic, I received my General Education Diploma (G.E.D), received some college completion diplomas, and received Adult Continuing Education ("A.C.E.") Certificates from the Bureau of Prisons for the completion of programs it offers, I have completed many Christian based programs and received certificates for those programs and now I am enrolled in IOU Islamic Online University.

I have likewise educated myself in the theories and principles of business and economics so that I may posses both the business acumen and labor skills necessary to combine the two area's of knowledge to one day create businesses and jobs to aid the people in my community I was able to see that were most in need of them-people who, much like myself, were and are growing up to be raised and misguided by the streets.

⑥     More over, having seen first-hand the traumatic events plaguing my community, I realized that I needed to contribute

efforts to curb the violence that the people of my community were inflicting upon each other and others. Thus, because I have never been satisfied "just knowing I have done wrong." I have sought to atone for my criminal misdeeds and ill contributions to society by trying to create and aid intervention programs that would curb violence by trying to convince people to resolve their disputes without resorting to violence so that they, too, could learn to build up rather then destroy the people they love and care about the most.

By this being my first time being sentenced to any prison time, I have come to realize that any person that spends over 3 years in prison and return to the same conduct that caused that person to be in prison the first time has to be insane or do not love his self, his family and friends. I say this because that person would put him self and them through this twice.

Moreover, my cooperation with the United States government has been made public, which have fully and finally severed my criminal ties. The principle code and

belief of the streets is that you do not cooperate, aid or recognize law enforcement as an authority figure.

Thus, with both my goals and hopes in my chest, I hope to oneday have the opportunity to return to my family and society in general.

If released, I would reside with my wife, who remains committed and optimistic that we can make the best of what life has to offer.

With a chance again to be free, I will devote time to raising (properly) my teenage children, and devote time to building a better relationship with my children who are now young adults, whom have giving me grandchildren who I also hope to mold and raise with positive reinforcement and nurturing.

For employment I plan to work doing home improvement (carpentry, plumbing and etc...), teaching home improvement and Community intervention.



On my off time, as noted above, I intend to work on my community outreach goals with the assistance

of local authorities and other non-profit organizations.

On that note, I close and thank you for giving me a moment of your time.

Marvel Thompson

Exhibit B – Medical Records

| Inmate Name: THOMPSON, MARVEL | | Reg #: 04028-748 |
|---|---|---|
| Date of Birth: | Sex: M Race: BLACK | Facility: ATW |
| Encounter Date: 04/15/2011 13:51 | Provider: Franco, Jon F. MD, CD | Unit: E52 |

Chronic Care encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**     **Provider:** Franco, Jon F. MD, CD

**Chief Complaint:** HYPERTENSION

**Subjective:** Has been hypertensive and on amlodipine. Has been doing well. No chestpains,no claudication. Has been diagnosed as pre-diabetic with HGB A-1c of 6.5 (5.7-6) and an FBS of 84mg . Is on metformin 500mg BID. Has a strong family hx of diabetis.

**Pain Location:**
**Pain Scale:**
**Pain Qualities:**
**History of Trauma:**
**Onset:**
**Duration:**
**Exacerbating Factors:**
**Relieving Factors:**
**Comments:**

**Seen for clinic(s):** Hypertension, Diabetes
**Added to clinic(s):** Diabetes

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 04/15/2011 | 13:55 ATW | 98.5 | 36.9 | | Franco, Jon F. MD, CD |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 04/15/2011 | 13:55 | 70 | | | Franco, Jon F. MD, CD |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 04/15/2011 | 13:55 ATW | 110/70 | | | | Franco, Jon F. MD, CD |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 04/15/2011 | 13:55 ATW | 97 | Room Air | Franco, Jon F. MD, CD |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 04/15/2011 | 13:55 ATW | 200.0 | 90.7 | | Franco, Jon F. MD, CD |

**Exam:**
**General**

Inmate Name:  THOMPSON, MARVEL
Date of Birth: ▮▮▮▮▮                       Sex:      M    Race:  BLACK          Reg #:     04028-748
Encounter Date: 04/15/2011 13:51            Provider: Franco, Jon F. MD, CD     Facility:  ATW
                                                                               Unit:      E52

## Exam:

### Appearance/Nutrition
Yes: Appears Well, NAD

### Eyes
**General**
Yes: PERRLA, Extraocular Movements Intact

### Ears
**Tympanic Membrane**
Yes: Normal

### Nose
**General**
Yes: Nares Patent, Turbinates Normal

### Peripheral Vascular
**Legs**
Yes: Dorsalis Pedis Normal, Posterior Tibialis Normal

### Abdomen
**Palpation**
Yes: Soft, Non-tender on Palpation
No: Mass(es), Hepato-Splenomegaly

### Musculoskeletal
Leap test is negative. Has equal sensation at all designated areas.

## ASSESSMENT:

| Description | ICD9 | Status | Status Date | Progress | Type |
|---|---|---|---|---|---|
| Benign essential hypertension | 401.1 | Current | 04/15/2010 | At Treatment Goal | Chronic |
| Diabetes mellitus, type II (adult-onset) | 250.00 | Current | 04/15/2011 | Initial | Chronic |

## PLAN:

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 59474-PHX | Amlodipine 10 MG TAB | 04/15/2011 13:51 | Take one tablet by mouth each day (Intake) x 180 day(s) -- refill |

Indication: Benign essential hypertension

| 59475-PHX | Aspirin 81 MG EC Tab | 04/15/2011 13:51 | Take two tablets by mouth each day (Intake) x 180 day(s) -- refill |

Indication: Benign essential hypertension, Diabetes mellitus, type II (adult-onset)

| Inmate Name: | THOMPSON, MARVEL | | | | Reg #: | 04028-748 |
| Date of Birth: | | Sex: | M | Race: BLACK | Facility: | ATW |
| Encounter Date: 04/15/2011 13:51 | | Provider: | Franco, Jon F. MD, CD | | Unit: | E52 |

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 59476-PHX | Lisinopril 20 MG Tab | 04/15/2011 13:51 | Take one tablet by mouth each day (Intake) x 180 day(s) -- refill |

    Indication: Benign essential hypertension

| | | | |
|---|---|---|---|
| 59477-PHX | MetFORMIN 500 MG Tab | 04/15/2011 13:51 | Take one tablet by mouth twice daily (Intake) x 180 day(s) -- refill |

    Indication: Diabetes mellitus, type II (adult-onset), Diabetes mellitus, type II (adult-onset)

| | | | |
|---|---|---|---|
| 59478-PHX | Simvastatin 10 MG Tab | 04/15/2011 13:51 | Take one tablet by mouth each day at bedtime (Intake) x 180 day(s) -- refill |

    Indication: Diabetes mellitus, type II (adult-onset)

**New Laboratory Requests:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| Profile tests-General-Lipid Profile Profile tests-General-Comprehensive Metabolic Profile (CMP) Blood tests-g-Glycated hemoglobin Profile tests-General-CBC (Complete Blood Count) **Additional Information:** fasting | One Time | | 06/01/2011 00:00 | Routine |

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chronic Care Visit | 07/15/2011 00:00 | MLP 01 |
| Chronic Care Visit | 10/17/2011 00:00 | Physician 01 |

**Disposition:**

Follow-up in 3 Months

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 04/15/2011 | Counseling | Plan of Care | Franco, Jon | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Franco, Jon F. MD, CD on 04/15/2011 14:14

Exhibit C – Certificates

# The Salvation Army

USA SOUTHERN TERRITORY

This is to Certify that

# MARVEL THOMPSON

*has satisfactorily completed*

## The Life of Christ

*of*

THE BIBLE CORRESPONDENCE COURSE

*and is hereby awarded this*

CERTIFICATE

Date _____ 03/21/07

*Mrs. La Pole*

CORRECTIONS BIBLE CORRESPONDENCE DIRECTOR

# The Salvation Army

### USA SOUTHERN TERRITORY

*This is to Certify that*

# MARVEL J. THOMPSON

*has satisfactorily completed*

## The Christian Life

*of*

### THE BIBLE CORRESPONDENCE COURSE

*and is hereby awarded this*

### CERTIFICATE

Date   04/28/08

*Mrs. La Pole*

CORRE TIONS BIBLE CORRESPO DEN E DIRECTOR

"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## Faith

ON THIS **4th** DAY OF **April, 2007**

GRADE **105%** **A+**

### THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Janes*
Rock of Ages Representative

Midwest Regional Director

Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Repentance

ON THIS **4th** DAY OF **April, 2007**

GRADE **105%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



# Certificate of Completion

## THIS IS TO CERTIFY THAT

### *Marvel Thompson*

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## *Beauty For Ashes*

ON THIS **9th** DAY OF **October, 2009**

GRADE **105%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Temptation

ON THIS **9th** DAY OF **October, 2009**

GRADE **105%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



**James E. Jones**
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# *Certificate of Completion*

### THIS IS TO CERTIFY THAT

## *Marvel Thompson*

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## *Mark*

ON THIS **9th** DAY OF *October, 2009*

GRADE **93%** **B+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## Bible

ON THIS **9th** DAY OF **October, 2009**

GRADE **100%** **A**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



**James E. Jones**
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## Luke

ON THIS **23rd** DAY OF **October, 2009**

GRADE **99%** **A**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## Guilt

ON THIS **7th** DAY OF **April, 2009**

GRADE **105%** **A+**

### THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*

Rock of Ages Representative

Midwest Regional Director

Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## Ecclesiastes

ON THIS **22nd** DAY OF **April, 2008**

GRADE **96%** **A-**

### THIS CERTIFICATE IS PRESENTED BY
### The Rock of Ages Prison Ministry



*James E. Janes*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Baptism

ON THIS    **4th**    DAY OF    **April, 2007**

GRADE    **101%**    **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## *Marvel Thompson*

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## *Regeneration*

ON THIS **4th** DAY OF **April, 2007**

GRADE **101%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Assurance

ON THIS **26th** DAY OF **March, 2007**

GRADE **105%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## That Ye May Know

ON THIS **19th** DAY OF **March, 2007**

GRADE **100%** **A**

### THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Loneliness

ON THIS **26th** DAY OF **March, 2008**

GRADE **105%** **A+**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
### THE BIBLE STUDY COURSE

## Victorious Living

ON THIS **3rd** DAY OF **March, 2008**

GRADE **101%** **A+**

### THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative



Midwest Regional Director

Title

# Certificate of Completion

## THIS IS TO CERTIFY THAT

### Marvel Thompson

**WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE**

### Bible

ON THIS **11th** DAY OF **January, 2008**

GRADE **101%** **A+**

**THIS CERTIFICATE IS PRESENTED BY**
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## Marvel Thompson

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
### THE BIBLE STUDY COURSE

## Prayer

ON THIS **11th** DAY OF **January, 2008**

GRADE **105%** **A+**

### THIS CERTIFICATE IS PRESENTED BY
### The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

## THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

## Song of Solomon

ON THIS **22nd** DAY OF **April, 2008**

GRADE **97%** **A-**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

THIS IS TO CERTIFY THAT

## Marvel Thompson

WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING
THE BIBLE STUDY COURSE

### Psalm I

ON THIS   **9th**   DAY OF   *November, 2009*

GRADE   *98%*   *A*

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative



Midwest Regional Director
Title

"Study to shew thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2:15

# Certificate of Completion

### THIS IS TO CERTIFY THAT

## *Marvel Thompson*

### WAS AWARDED THIS CERTIFICATE FOR SUCCESSFULLY COMPLETING THE BIBLE STUDY COURSE

## *Psalm III*

ON THIS **4th** DAY OF *November, 2009*

GRADE **97%** **A-**

THIS CERTIFICATE IS PRESENTED BY
The Rock of Ages Prison Ministry



*James E. Jones*
Rock of Ages Representative

Midwest Regional Director
Title



# The Salvation Army

### USA SOUTHERN TERRITORY

*This is to Certify that*

## MARVEL J. THOMPSON

*has satisfactorily completed*

## The Early Church

*of*

### THE BIBLE CORRESPONDENCE COURSE

*and is hereby awarded this*

### CERTIFICATE

Date _____ 10/13/09

*Mrs. La Pole*

CORRECTIONS BIBLE CORRESPONDENCE DIRECTOR

# Certificate

This certifies that

*Marvel Thompson*

has satisfactorily completed the Lamp and Light Bible course

## THE FIRST STEP

having earned a grade of

96%

*"Continue thou in the things which thou hast learned and hast been assured of." (2 Timothy 3:14).*

*Paul Kaufman*
Director

January 22, 2008

*Theodore Yoder*
Teacher

Lamp and Light Publishers, Inc. 26 Road 5577, Farmington, NM 87401 USA

12008/2-06

# Certificate

This certifies that

*Marvel Thompson*

## has satisfactorily completed the Lamp and Light Bible course
### STEPPINGSTONES TO GOD

having earned a grade of

94%

*"Continue thou in the things which thou hast learned and hast been assured of." (2 Timothy 3:14).*

*Paul Kaufman*
__Director__

*Theodore Yoder*
__Teacher__

Lamp and Light Publishers, Inc., 26 Road 5577, Farmington, NM 87401 USA

May 02, 2008

12008/2-06

# Prisoners for Christ Outreach Ministries

recognizes

Marvel Thompson

as having successfully completed

## Unit "A"

from the

## PFC Bible Study Correspondence School

Conferred this 17th Day of ___April___, 2008

*Greg Von Tobel*
Executive Director

*Brent Heisen*
Manager, PFC Correspondence School

# AMERICAN BIBLE ACADEMY

Presents this Certificate to

Marvel Thompson

upon successful completion of

Study Course __The Gospel of John__

Awarded the ___22nd___ day of ___April___ , ___2008___ .





P.O. Box 1490 • Joplin, MO 64802 • 417/781-9100

*Joseph Welch*
ACADEMIC DEAN

*Mrs. Gwen Wadell*
REGISTRAR



### GRADE REPORT
### AMERICAN BIBLE ACADEMY
P.O. BOX 1627
JOPLIN, MO 64802-1627

NAME:  Marvel Thompson                    STUDENT ID#: 309329

COURSE:  The Gospel of John                       DATE: 4/22/08

EXAM 1:  94        EXAM 2: 95        EXAM 3:  93

FINAL GRADE: 94            CREDITS:  0

Grading Policy - The grading system used by A.B.A. is as follows:

A+ ....100-99%    A ........98-95%    A- .......94-90%    B+ ......89-87%    B ........86-84%

B- .......83-80%    C+ ......79-77%    C .......76-74%    C- .......73-70%    D+ ......69-67%

D ........66-64%    D- ......63-60%    F ..........59-0%

Please update any changes in your mailing address.
Websites: www.abarc.org • www.arm.org

NL 2 (R 806)

# Bible Correspondence Course

## Certificate



Marvel Thompson

*The New Life in Christ course 2*, having satisfactorily completed

Source of Light Ministries International in recognition of this achievement on

the　　16th　　day of　　April　　in the year of our Lord　　2008　.

## SLM Discipleship Schools

General Director
SLM International

International Literature Coordinator
SLM International

Ten Mile Bible
School

Representative

98%

"The things that thou hast heard of me among many witnesses, the same commit thou to
faithful men, who shall be able to teach others also."
2 Timothy 2:2

# Bible Correspondence Course

## Certificate

**The NEW LIFE in Christ**

Nu. I (R. 1106)

Marvel Thompson , having satisfactorily completed *The New Life in Christ course 1*, is granted this Certificate by Source of Light Ministries International in recognition of this achievement on the 15th day of April in the year of our Lord 2007 .

## SLM Discipleship Schools

General Director
SLM International

International Literature Coordinator
SLM International

Ten Mile Bible School Representative

98&

"The things that thou hast heard of me among many witnesses, the same commit thou to faithful men, who shall be able to teach others also."
2 Timothy 2:2