IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | ) No. 04 CR 464-1 |
| | ) |
| Marvel Thompson, | ) |
| Defendant. | ) |

Memorandum Opinion and Order

Marvel Thompson, erstwhile "King" of the Black Disciples ("BD") street gang and the lead defendant among forty-six individuals charged with participating in a vast narcotics conspiracy spanning well over a decade, is currently serving the 540-month prison sentence I imposed at the close of his two-day sentencing hearing in April of 2007.[1] Mr. Thompson's conviction and sentence have withstood numerous attacks in the intervening years, which he has lodged both on direct appeal and in collateral proceedings, the latter of which ended only in March of 2019, when

---

[1] As the Seventh Circuit explained in its decision affirming Thompson's sentence, the "king" served as the leader of the gang and was responsible for developing gang policy and overseeing drug-trafficking operations. *United States v. White*, 582 F.3d 787, 794 (7th Cir.2009). Evidence presented at sentencing showed that Thompson was the sole king of the Black Disciples from the 1990s until 2003, when the gang shifted to a three-king leadership structure. *Id*. He then served as one of the three kings. *Id*. at 794-95.

the Seventh Circuit denied his petition for rehearing en banc of his successive § 2255 motion. In these challenges, Mr. Thompson disputed the validity of his guilty plea; the factual basis for various enhancements applied to his sentence, including for his leadership role in the drug conspiracy and obstruction of justice; the government's conduct at sentencing; and the effectiveness of his attorneys at various stages of his prosecution. *See e.g., United States v. White*, 582 F.3d 787 (7th Cir. 2009) (affirming sentence and conviction), *cert. denied*, *Thompson v. United States*, 560 U.S. 940 (2010); *Thompson v. United States*, 732 F.3d 826, 827 (7th Cir. 2013) (affirming denial of § 2255 motion), *cert. denied*, 571 U.S. 1244 (2014).

A recurring theme in these proceedings was Thompson's insistence that he was *not* the King of the BDs as the government charged, or—in a variation on the motif—that even if he was known as the King of the BDs, that title did not imply a leadership role in the conspiracy the government charged. I rejected this argument in all of its forms, as did the Seventh Circuit, which concluded that it could not be squared with the "mountain of evidence establishing his role as a leader of the Black Disciples' drug conspiracy." *White*, at 795. Indeed, the appellate court agreed that Thompson obstructed justice when he "lied about his role as king of the Black Disciples and disputed the degree to which he engineered the gang's drug-trafficking operations," even as the

2

evidence "overwhelming[ly] revealed that he directed a massive drug organization for approximately 15 years." *Id*. at 797. Mr. Thompson has never acknowledged the full extent of his involvement in or control over the gang's violent—and extremely lucrative—drug operations.[2]

Against this backdrop, Mr. Thompson asks me to reduce his sentence to time served under Section 404(a) of the First Step Act. He is eligible for that relief because he was convicted on his plea of guilty to Count I of the superseding indictment, which charged the "covered offense" of a conspiracy to distribute drugs including crack cocaine. *See United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020) (statute of conviction, not offense conduct, determines eligibility); *see also United States v. Hudson*, No. 19-2075, 2020 WL 4198333, at *3 (7th Cir. July 22, 2020) (defendant convicted of multi-object conspiracy involving crack was eligible for relief where the resulting sentence incorporated crack

---

[2] In *White*, 582 F.3d at 795, the Seventh Circuit described the evidence the government presented through nine different witnesses at Mr. Thompson's sentencing, which established "that Thompson controlled the entire Black Disciples organization, provided drugs to gang members to sell, controlled more than 15 drug-selling locations, made thousands of dollars a day from drug sales, collected payments from street-level drug dealers, laundered drug money through real estate he owned, resolved disputes among gang members, and disciplined Black Disciples members who broke gang rules. The government also introduced evidence seized from Thompson's apartment, which included several handguns, gang literature, more than $300,000 in small bills, and letters from other Black Disciples members who acknowledged his leadership role and asked for money or assistance."

offense). The question is: *should* I grant relief? I look to the "familiar framework" of 18 U.S.C. § 3553(a) and consider its factors anew to answer this question. *Shaw*, 957 F.3d 741.

At his sentencing, I observed that the nature and circumstances of the offense "could hardly be worse." Sent. Tr. at 225-26 DN 1873-1. Mr. Thompson insists that he has now taken full responsibility for his mistakes of the past, and that he intends to become a productive member of society and set a positive example for his family and community. But these arguments are not new. At his sentencing, Mr. Thompson also claimed to acknowledge his past mistakes, but all the while he insisted that his role in the drug conspiracy was trivial and was "not [his] regular conduct." Sent. Tr. at 224. And while Mr. Thompson's personal and community activities undoubtedly did some good to his family and those close to him—as indeed several witnesses testified—any positive influence he may have had was eclipsed by his role in perpetuating and indeed expanding the BD's chokehold on communities throughout Chicago's South and West sides.

In the letter he attaches to his reply, Mr. Thompson claims finally to have realized something he did not previously understand: "that you cannot, simultaneously, build up and destroy that which you purport to love." Reply, Exh. A, at 5. But I am not convinced that the irony of Mr. Thompson's self-portrayal throughout his prosecution as a community do-gooder was lost on

4

him at the time, given the abundance of evidence establishing that as King of the BDs, he "ordered one gang member killed whom he suspected of cooperating with law enforcement and another gang member shot for violating gang rules," and that the conspiracy he controlled "us[ed] younger gang members to provide security," "protected its drug operation by intimidating witnesses, shooting at police officers, and collecting debts through violent means." *White*, 582 F.3d at 796, 794. Nor am I certain that the awakening Mr. Thompson describes in his letter is genuine, as he continued to deny his leadership role in the conspiracy as recently as 2015.

Nevertheless, the Bureau of Prisons has assessed Mr. Thompson's recidivism level as "minimum" based on a risk assessment tool known as "PATTERN." *See* U.S. Dept. of Justice, Office of the Attorney General, The First Step Act of 2018: Risk and Needs Assessment System – Update (Jan. 2020).[3] Mr. Thompson does appear to have spent his time in prison productively and to have the support of his family and community upon his eventual release. These factors suggest that a sentence shorter than the 540 months I imposed in 2007 is appropriate. On the other hand, the views I previously expressed regarding the need to promote respect for the law, impose just punishment, and provide adequate deterrence

---

[3] *See* https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf, last accessed August 6, 2020.

5

remain unchanged. *See* Sent. Tr. at 227 ("I feel I need to...say to the community: No. People don't get to do this.... And if you do, there will be very serious consequences."). These interests would not be served by slashing Thompson's sentence by roughly two-thirds.

Mr. Thompson compares himself to certain of his co-defendants whose sentences I reduced to time served under the First Step Act, as well as to a defendant sentenced to life imprisonment by another judge in this district whom I also resentenced to time served under the Act. But these comparisons serve only to underscore that time served is not an appropriate sentence for Mr. Thompson. First, although several of these individuals were high-ranking gang members, none but Mr. Thompson held the very top position in the gang's hierarchy and controlled the gang and its drug operations for over a decade. The difference is reflected in these co-defendants' original sentences of 262, 252, and 324 months on the conspiracy count to which Mr. Thompson pled guilty and received a 540-month sentence, which I remain convinced was appropriate. And although the defendant in the other case to which Mr. Thompson refers was serving a life sentence when he filed his First Step Act motion, he had been in custody for nearly twenty-five years at the time of his release. By contrast, the sixteen years Mr. Thompson has spent in custody represents only a small fraction of his original sentence.

6

Having newly considered the § 3553(a) factors in light of Mr. Thompson's past and present conduct, I conclude that a reduced sentence of 360 months is appropriate. His sentence remains unchanged in all other respects.

                                            **ENTER ORDER:**

                                            **Elaine E. Bucklo**
                                            United States District Judge

Dated: August 18, 2020